We are now recording. Here you hear you this honorable appellate court for the second judicial district is now in session, the Honorable Robert D. McLaren residing. Your Honor, the first case on the docket this morning is to batch 22 batch 0008. The people of the state of Illinois plaintiff, I believe, the Devin C Coleman defendant. Arguing for the appellant. Mr. R. Christopher white. Arguing for the appellee, Ms. Lynn, and. Thank you, Mr. White, you may proceed. Thank you. Good morning, may it please the court counsel, I'm Chris white on behalf of Devin Coleman the defendant. Following the bench trial Devin Coleman was convicted of first degree murder based on two theories of accountability of liability. Although Devin was not the shooter the trial judge found him guilty of intentional murder based on the accountability for the actions of his co defendant Philip Walker, who fired the bullet that killed the decedent. The trial court also found Devin guilty of felony murder based on the underlying offense of aggravated unlawful use of weapon. A charge supported by the unlawful purchase of a firearm while under age and without a Ford card, although the legislature did not specifically enumerate that offense as a forcible felony to support a conviction for felony murder. The trial court determined that the specific circumstance surrounding the incident satisfied the statutes residual clause, or what the trial court generously characterized as the catch all final sentence in the definition. Parenthetically yet notably Devin is the only one involved in this incident that it's not alleged to have touched a firearm yet he is the only participant who stands convicted of first degree murder. If I could ask you sort of a threshold question. The self defense available to a defendant who was charged with first degree murder. The evidence establishes that the defendant was committing a forcible felony, resulting in the death of another person. The self defense even available under those circumstances circumstances generally self defense is not available. No. Right. So is the general question here whether or not this is a forcible felony or not. I think that is the, I think that is the important question here. The trial court found in fact evidence of self defense that went unrefuted and nevertheless didn't really address that in its final order it just proceeded to the forcible felony aspect of felony murder and determined that felony that self defense would not be available despite its existence for the charge of felony murder. Oh, we could defer on any basis in the record so let's take it through this I think Justice Jorgensen's raises a good point. And as I understand it, aggravated unlawful use of a weapon is not in and of itself a forcible felony. Is that correct. Correct. Okay, but the law also says that depending upon the circumstances, the test to be applicable and determining whether the felony murder was applicable or not, is whether the felony is normally classified as nonviolent. It is under the facts of the particular case, it was contemplated that violence might be necessary to enable a co conspirators to carry out their common purpose. I think that's really the crux of the issue here. And there are a lot of factors court noted that weighed on that issue, whether or not the place was dangerous had a history of violence, the time of night, whether weapons would be brought. So, what's missing from the evidence here in your opinion to establish those factors. Well, I think the factors that the court side of those five factors. Many of them are actually incorrect. Aside from being factually incorrect they are factors that are involved in every illicit transaction location for example although the court here found that the defendant chose a location that would I believe in his wording here, a parking lot of a housing complex ways to escape quickly places to hide an area known by the defendant not a public place where there could be witnesses. The problem with that is that the defendant didn't choose that location that location was chose by the person who sold him the firearm, or was robbed him essentially, but perhaps more importantly is that it was not a deserted area. It is if in some purposes, a public place it's a parking lot of a housing complex it's not you know some some. I can't think of something that wouldn't be out in a field somewhere in the middle of the night. We're not disputing value that this was known as a high crime area. Sure, it's also where the participants lived, and it also boarded the high school that the defendant and his co defendant attended. So it's a high crime area but that doesn't mean that these people went here because crime occurs here and you know that's where we're going to do our crimes. They went here. First of all, as I said, because it was at the very least mutually agreed upon but the evidence seems to suggest that it was actually the person who set them up for the robbery who actually picked this particular location. And I think, you know, in that sense, you know, for the, the offensive or the felony of armed robbery which would be a forcible felony then I think if you're weighing that to those who robbed the defendants. That, that may be a consideration but as far as the defendant picking this area in order to go and purchase a firearm. I think it's a little, a little generous to say that the location they're weighed against and similarly the timing it occurred at night, but nearly every illicit transaction is going to occur at night and it's important to note too because you know you're the idea behind an illicit activity is that you're not going to be detected but it's important to to note that late at night or night is nine o'clock on a June evening, you know, I think as we all know from this area. It's it's maybe even dusk but it's certainly not, you know, the pitch of night. The defendant alluded to I mean it was inherent in this transaction that guns would be present during this transaction wasn't it. Sure they're buying a gun but I don't think the, you know, if the legislature wanted to make the purchase of a firearm or anything involving a firearm or forcible felony they certainly could have done that and they didn't do that. And the purchase of a felony per se. There's nothing here that that suggests that these people in buying a firearm contemplated violence in fact I don't think you're right, I don't think the legislature would want to go that far make it a hard and fast fool but the case law also contemplates you've got to give a consideration to the totality of the circumstances surrounding the transaction. I mean why these other circumstances I think aren't particularly valid you know as I mentioned the night the location, two things that weren't necessarily even chosen by the defendant but to the extent they were, you know, their areas that are familiar to everyone they're not chosen because it's some sort of isolated area in the middle of night, which is what the trial court seemed to suggest in fact there was evidence that granted it was after the commotion of a shooting but there were hundreds of people on site so this is not, you know, it's a residential area which a parking space for some purposes would be a public place is really not some isolated area and to add those along with another one which was, you know, money because he had money separated that he was in every illegal transaction because you want it to move quickly it's true probably in a majority of legal transactions you put your money for a particular purchase in one pocket so that you can do it quickly and not stand in line or whatever the case may be. So to hold that against them in fact, the amount of what seemed to be his amount for the purchase of the gun was isolated to suggest that he did not anticipate or want violence that he was paying the amount that was requested of, you know, the purchase price. And then the other factor of, you know, the alacrity is the court says of the defendant and his partners and opening gunfire. You know, to suggest that they shot the decedent and the co defendants with alacrity or, you know, synonymously a cheerful readiness is frankly unsupported nonsense. I mean they did not start shooting at them, you know, upon first sight, they began to feel concerned that, you know, perhaps they're going to be robbed which parenthetically I think it's important to note is this isn't even just their subjective interpretation that they may be robbed the state's evidence establishes they were going to be robbed. So as these three people and there is an agreement to meet one person. The Shan Kwan, that person is going to sell them a gun. The defendants then start to see three people surround the car and Shan Kwan was not shot until he reached into the car, grab the keys, in fact, not until after he grabbed the keys. Told them to told the people in the car to give them everything and took the keys or he had the keys which rendered them a mobile and essentially sitting ducks for the armed robbery that actually did occur, or was going to occur. If I could interject a thought. What about the standard of review here. Because as I understand the proper standard of review and a sufficiency of the evidence is whether when viewing the evidence in the light most favorable to the prosecution. Any rational trial effect could have found the elements of a crime, and it is the same thing. Same test when we look at the defendants claim of self defense, it applies whether the inquiry is whether the state proved that the defendant did not act in self defense. So you've got the hurdle of the standard of review working against you, don't you. I think the way that the judge that the trial judge set forth. These, these factors is it's interpretation of the trial judge nobody's really contesting the facts as they occur. The facts that are in the record, it's simply that the facts that are in the record do not constitute a showing that you know they anticipated violence and another thing too is, you know, being worried about the possibility of violence and having a gun because it's also not established that that these people knew that that lightener had the gun lightener had what appeared to be or at least the evidence suggested was a legally purchased firearm that he obtained when he was in Tennessee where he's actually a resident and was up here visiting. Um, they knew he owned a gun, but you know I think many people certainly know people who own guns and don't necessarily believe that those guns are, you know, ever present on the person. But to the extent he had the gun and even if they had known which again there's no evidence they had, you know, anticipating perhaps are being worried about the possibility of violence is not the same as anticipating violence. Our position is that you're the offensive unlawful unlawful unlawfully purchasing a firearm, essentially, is not a forcible felony particularly in this case where they just want that that was the intended result because if you're going to use violence to purchase a firearm they call it armed robbery. And that's not what this is, this is simply, you know, through no fault of theirs and I don't think there's any way that they could have anticipated that this was going to end up into a shooting match it appears, you know most transactions even if if illicit, you're going to go and buy a substance which you're maybe not allowed to get and someone's going to sell you a substance that they're not allowed to purchase there in every one of those transactions there will be probably a heightened possibility of violence because if a police officer shows someone else someone may spook, there will always be that possibility of violence of a transaction like this but there's nothing in this particular transaction that suggests that it was more likely that they were going to, you know, that they were contemplating violence in any way. So why how would we ever know who's in the defendant's minds, the group gets together, they're contemplating certainly without a shadow of a doubt an illegal transaction. You're saying well they had no reason to really know for sure there was going to be some violence there. How would we ever know what's in the defendant's minds, other than the circumstances involved. The circumstances but that's that's the point here is I think these circumstances do not demonstrate any type of contemplation of violence by any of the defendants, this is not. This is purely the purchase of a firearm and the court uses the uses the factor that it's a firearm so therefore somehow inherently dangerous or, you know, a gun being purchased and so obviously they then knew that this had a possibility or I guess that was merely a possibility but they anticipated or contemplated violence occurring. And that's simply I think an overbroad statement of what felony murder is supposed to encompass and and also not, not one that the legislature chose to do and I don't know what's in the person's mind but for, you know, obviously, circumstantial evidence but they're the factors that are cited by the trial court here do not provide that circumstantial evidence necessary to establish that. Council. Yes, hear me. Certainly, yes. Would it be fair to say that if the trial judges interpretation of the facts in this case replied to every other case where a gun was being purchased legally or illegally. If someone pulled the gun and tried to rob them, and they happen to have a gun on them whether it was listed or illicit that they would always be guilty of felony murder, because under the interpretation the trial court made. They did it with alacrity which means they weren't doing this in self defense. They were anticipating and committing violence upon someone who's trying to rob them. And the idea that for instance, if you separate your money that this is a criminal intent, whereas if you don't separate your money, what is it is that innocent intent. The, the findings that this trial court made would appear to remove anyone's ability to defend themselves, even with a bow and arrow, because a bow and arrow is a lethal or an instrument of death. So, am I correct in my reductio ad absurdum observation or not. I think that's exactly the problem here, particularly because of the very, you know, speaking of specific circumstances of case, given the, the very particular nature of this case where there actually is evidence of that event that you described where they actually, you know, at some point here is these people approach the car, that purchase of a firearm felony ended, and we now have an armed robbery and it's an armed robbery of which the you know the three people in the car are not are not participants, at least, you know, as as the robbers. So yeah, I think that would open the, that would be a problem for anyone who was ever armed with anything and committed an offense and something completely out of the blue happened to them. I got a question for I'm sorry, you can follow up. I'll wait. Oh, that's okay. It. I'll ask this Harrington. Okay, Council, let's assume for the sake of argument that this is not a forcible felony. Where is sufficient evidence of self defense. The sufficient evidence of self defense is that they want the chalkboard found evidence of self defense and not some evidence sufficient evidence, well, an objective standard the state established that they in fact were being robbed. And from the perspective of the defendants. You had three older men approaching these guys and, you know, surrounding the car. And importantly, again, shots didn't occur this alacrity that he describes did not occur until this, you know, he reached in grab the keys and said give me everything. I mean, that's, that's, that's the robbery right there. I agree, it appeared to be a robbery. But the deceased, never, never extracted his gun from his waistband or his pocket whatever it was never, never did that. So how do we justify self defense anyway. Well, there's, there's some question about that first of all, but also, you know, it's like the videotape was was pretty clear that he never drew the gun from the school I believe it was. It's, yeah, I'm not sure how clear that videotape was I mean it was fuzzy I mean granted it all occurred within a very quick period of time, but it's also the, you know, subjective standard, generally of the defendant and when you have these people know everything while although he may have pulled the gun they certainly knew that he was armed in that circumstance. Yeah, Mr. Why wasn't there some evidence that they could view a weapon underneath the victim's shirt. Wasn't some testimony that they saw the outline of a gun. Yes, I believe it was justified to that. Yes. All right. That was the gun they were supposed to be buying right within some kind of extended magazine extended magazine probably but it's just as I pointed out it was under the shirt so I don't know, you know, as far as everything happening so quickly which, you know, there's usually a consideration there of, maybe, maybe observations are not correct maybe they're they're they're tainted in some way but there was a gun that they saw what appeared to be a gun under his shirt and it probably was that one but we don't obviously really know that for sure. In fact, it probably was that one because another one wasn't recovered but it doesn't mean that they necessarily knew that. Have you ever seen any case law that indicates that when one is being robbed, that one has to wait until the perpetrator fires a shot before they return fire. No, in fact I believe there's case law that deadly force can be used, you know for fleeing felons and also during the commission of a felony, which this obviously would be, which is you know old old common law probably but there is some justification I believe she had one on that case Garcia dealt with an instruction whether a jury should have been instructed as to the use of deadly force in order to paraphrase necessary to prevent him and it does great bodily harm as well as to prevent commission of a forceful was that resisting a forcible felony is itself a forcible felony, and therefore because someone died. This defendant is guilty of murder. It appears to be that way but in his brother. I mean, is rather sort of tortured decision here, the, the, the order. He's sort of the court addresses, you know begins with forcible felony, which seems to suggest an equity to, you know, find liability for this defendant no matter what because it's forcible felony. And it's sort of a description of why forcible felony wouldn't be or self defense wouldn't be allowed in a forcible felony. And then some more discussion about intent and oh yeah there was some evidence of self defense but back to the point we're not allowed to use self defense for a forcible felony. So I think that really is what the trial court ultimately disturbed here. Any other questions. None. And no, no, thank you. Okay, sir, you'll have an opportunity to make rebuttal. Thank you, Miss Harrington you may proceed. Good morning, Your Honor's counsel, may it please the court. My name is Lynn Harrington and I represent the people of the state of Illinois. Your Honor is the first thing I'd like to touch on is the fact that the defendant here was found properly found guilty of four counts of first degree murder. So, we need to address counts one and two, that the defendant was properly found guilty on a basis of accountability for Walker's actions in shooting and killing the victim. In people versus Salazar this court set out the law of accountability in the state of Illinois, and said the state can prove a defendant's intent to promote or facilitate an offense by showing either one, the defendant shared a criminal intent to the principal, or to the facts of this case, there was a common criminal design. We know your honors that the defendant and Walker had a common criminal design, because the defendant conceded those facts in his testimony. He conceded that he and Walker wanted to go purchase illegally a firearm, they were under the age of 21 that neither one of them had a initial illegal act. I believe some I believe opposing counsel says in his brief well that's not in furtherance of the common criminal design because the common criminal design was only for the purchase of the illegal gun. However, your honors, our Illinois Supreme Court has specifically said in people versus Fernandez, that, and I'm just going to quickly give you facts of Fernandez defendant is asked by co defendant Hey, can you drop me off this place I'm going to break into some cars sure. Defendant stays in the car doesn't do anything watches the guy breaking into the other cars. All of a sudden the police officer comes on site well that's unexpected. And what happens, co defendant shoots the police officer. Our Illinois Supreme Court said, Oh yeah, even though that was unexpected that was in furtherance of the common criminal design that defendant and co defendant had to break into those cars. That's exactly what happened here. The defendant also conceded, he knew the place he agreed to meet the victim, he conceded that he knew was dangerous there were a lot of shootings there. He directed light or to park into a dark corner. And when the victim approached the car he admitted the victim did not have a weapon in his hand. And your honor I'd also like to touch on with regard to the counts one and two, that there was not sufficient evidence of self defense here. Illinois law specifically says, a person is legally justified in using force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against imminent, and that's the key word here to resist a forcible felony being committed. With regard to forcible felony your honor the law is clear that self defense is not a proper affirmative defense so self defense was not available to the defendant with regard to counts, three and four. So you're saying that, why, yeah. I'm sorry, did someone have a question. And did you have a question or I'll stay there. Yeah, so you. But if they're the victims of an armed robbery, don't they have the justification to use deadly force to protect themselves against an armed robbery and armed robbery your honors doesn't mean that there's an imminent use of force, and as I put throughout my brief here videotape doesn't lie. We looked at that videotape I set it out of my brief that we're talking about a matter of seconds. And that's what the trial court was talking about when he been it specifically said about the alacrity here. Literally, there was one second between the time the victim's body came out of the car and Walker shot him and killed him. There is no way as a defendant would like you to believe that as the victim pulled his body out of the car. Lightner quickly open the council grab the gun fumbled it into the back backseat Walker grabbed the gun repositioned himself aimed and shot at the victim and killed him. It's just physically impossible based on the timestamp on the video from the high school. If I couldn't, if I understand your argument. Any two people or more. We'll have a common design to buy liquor illegally or drugs, illegal Lee or stolen property illegally above a certain value or purchase a gun doesn't have the right of self defense if in fact what they intended to do was thwarted by an armed robbery. No, Your Honor, actually, if you allow me I was going to go through the self defense elements that there are six elements to self defense, and that if the state negates any one of those elements, the self defense affirmative events must be rejected. And here. Okay, the first one on lawful force was threatened. There's no evidence of that whatsoever. From looking at the video. We know that there was a gun in the waistband of the victim, but as opposing counsel even admitted that might have been the gun that they were there to purchase. There was no unlawful for you. So if that's true Mr Harrington he has access to the gun. He reaches into the car and forcibly tries to remove the keys. So what's the defendants in the driver's seats hand away, and he has a gun available to him. Does it matter whether that that was the gun he was selling, or some other gun. My point, Your Honor, is that simply because the Walker saw a gun or the defendant saw a gun in the waistband doesn't give him justification to pull out a gun himself and shoot the victim and kill him. You know I agree with you completely if that's all it was somebody approaches the car and Walker pulls out a gun and shoots him, but he was in the process of committing the robbery. When he was shot was he not. Otherwise, what's he doing reaching into the car for the car keys. That's a criminal offense. We don't know the victim's intent, Your Honor, we don't know whether he simply did not want to get scammed by these young men and wanted to make sure that he got his money before he turned the gun over the fact of the matter though is the law sets out the self defense elements and they haven't been met here. Another, another element is that the defendant was not the aggressor. Well we know that's not true, because the defendant was legally accountable for Walker's actions, and he certainly was the aggressor when he shot that gun Council. When, when a drug deal goes down, does the junkie, or the person selling the drugs demand the keys of the purchasers car before he will transfer the drugs to the purchaser. My understanding is they usually just demand the money before they hand over the drugs. And so your argument that the attempt at taking the keys wasn't evidence of an armed robbery, which suggests the contrary because most people don't try and take car keys for people in a situation which is evident from the things that happened thereafter which was they were stranded there because the car was the car keys were lost. They didn't apparently have an extra pair of keys. So to say that the robbery didn't commence, and the shot was done with alacrity. When he was backing out of the vehicle fails to take into account. Number one that the keys were taken number two. When did he say, and I don't think that the video would display this, when did he say, give me everything you have, because I think that's probably the best evidence of whether or not this was an armed robbery, or at least an attempt. Thank you, Your Honor, I was going to get to that point I appreciate it. The, the only evidence we have is what that the victim actually said give me everything you have is from the defendant himself, and the trial court, as the trier of fact, have the duty to assess the credibility of the defendants testimony, and he specifically found the defendant to be incredible. He, the way he testified was to show that no one in the car, the, the car was responsible for anything whatsoever, and that all these things could have happened in one second time before Walker shot, shot the victim. The fact of the matter is even taking the keys out of the car was not enough to justify Walker shooting and killing the victim. There's also. So, if the state negates any one of these elements, Your Honors, then the self defense has to be rejected. And I believe again the video makes it quite clear. So here we have at least three of the six elements have not been shown here. So, with regard to the accountability counts Your Honor counts one and two. Under the case law, it is clear that Walker and the defendant had a common criminal design to purchase those illegal guns, and when things went down and they went bad and Walker shot the victim. The defendant was legally accountable for his actions so right there you've got first degree murder on counts one and counts to turn into this simple question. If the shooter isn't liable. How can this defendant be liable. Your Honor that goes to the issue in opposing counsel's reply brief where he said, Well, since Walker was found was Walker was acquitted by a jury trial it doesn't make sense here however the case law is well settled that that has no bearing whatsoever on defendant First we have two different trier facts one a jury, the other one, a bench trial. So, you know, a case law says one trier fact might have been more lenient than the other. Here a bench trial. Obviously a trial court is more knowledgeable on the state of the law in Illinois, maybe a jury was confused about the concept of accountability. I'm not asking you about the distinguishing aspects of a jury trial versus a bench trial, I'm suggesting to you that in my hypothetical, the trial judge determined that the shooter was not liable for murder, but the accessory was. Isn't that an inconsistent ruling. Your Honor, I can't speak to that because it certainly wasn't the facts of this case. Usually that's what happens with a hypothetical is that it usually is based upon facts that aren't necessarily in the record. Okay, point is, is it philosophically is as a matter of law. If the shooter is not liable for murder. How can an accessory under felony murder or accountability be deemed to have been guilty of the crime. Philosophically, Your Honor, I would agree that if the shooter is not liable, then the, then the co defendant is not liable but again that simply did not occur here and based on the facts here if Walker had been tried with the defendant, the Walker was absolutely liable for shooting and killing the victim. Again, that's the whole reason why we have severance of trials and inconsistent verdicts to avoid inconsistent verdicts but that's precisely what we've got here. Yes, Your Honor, but it's also been well settled that you can't always have co defendant and defendant in different trials, and because they have different verdicts, that would, that doesn't make any sense. No, but it was your statement that had they been tried together they both would have been found guilty. That's not necessarily true. It's just as likely they both would have been found not guilty. Oh, Your Honor, I'm sorry, my, my point was to go to Jessica McLaren's comment about Walker hypothetically not being liable for the shooting. That was my only point that based on the facts in this case, and the evidence in this case, Walker was, was absolutely liable for shooting and killing the victim. Your Honor, Your Honors, the Illinois Supreme Court is also held in people versus both that the fact that one of the defendants is armed necessarily implies they contemplated the use of force against an individual and they were willing to use that force. This is of course turning to court to count four and five, and the indictment, the felony murder counts for aggravated unlawful use of a weapon, and though, although I'm aggravated on the lawful use of a weapon under these sections meaning being under 21 and not having a contemplated that violence might be necessary to enable the conspirators to carry out their common purpose, and that's people versus goals and Illinois Supreme Court Council, if somebody commits a retail theft and has a firearm on them. Is that a forceful felony. There would have, I would have to know a lot more facts in the case Your Honor. Well, it. The person supposedly had a gun in their possession, and they committed retail theft of say a. Oh, a gross of razor blades which is probably a felony. So, the point is is your argument. If you apply it across the board is making is removing the defense of self defense because supposedly you're committing a forcible felony, because you supposedly have a means to defend yourself. If he had a knife with a blade that was three inches long, it wouldn't be a crime but it'd be used while committing retail theft and killed somebody, he would be guilty of murder even though the person was trying to kill him. That seems to be what your argument is, as soon as there's a gun in the possession of somebody who is committing a crime. They've lost the right to self defense. You see that or not. May I respond Your Honor I see the right time. No, Your Honor actually people versus both what they were saying is that the fact that you were armed necessarily implies that they contemplated the use of force against an individual, but you have to look at the facts of every single case of each individual case and that's exactly what the trial court did here Your Honor, and there were a lot of reasonable inferences that could be made, and were properly made by the trial court to find that this was indeed a forcible felony to support the finding of guilty of first $700 in his pockets, which were divided. And I think the trial court could make a reasonable inference that they were divided because he was going to give the. I'm sorry Shaquan a certain amount of money for the gun and he didn't want to see him pulling out a lot of $700, because he didn't want things to go down bad. And obviously it's a trial court said the defendant knew that the seller had a firearm, because that's why they were there. And also, so it's a very common sense reasonable inference that light there was are that the defendant and Walker knew that light there was and let's sit here for six to 10 minutes but not talk at all about why we're here or what we're doing. It was all these facts together Your Honor, that showed that clearly, the defendant and Walker contemplated that violence could have occurred, and that's any other questions. Thank you. I think I have one, what is the implication that the gun wasn't on the person of any of the defendants. Until such time as, from what I gather, since the victim had already obtained the key keys to the car that the, the owner of the gun didn't make an attempt to acquire the firearm until after the keys were taken. So, how does this establish intent to use a gun, when it's in a glove box, so to speak, or the council. It was in the center council I think the evidence was. Yes, Your Honor, that is correct. That actually goes back to the video, Your Honor, and it shows that literally, all this began at 908pm at 14 seconds the victim approaches the car at 17 seconds. The victim is at the passenger door the defendant says he doesn't have a gun in his hand at that point, 19 seconds he opens the car door, no gun, 22 seconds victim leans into the car, 28 seconds, top portion of victim's body is in the car reaching for the car It's impossible for Lightner to have picked to open up the council and grab the, grab the gun because the victim's body is laying over it. 31 seconds the victim's body gets out of the car, the video shows no gun, 32 seconds, the victim is shot. There's no physical possible way in that one second, Lightner could have opened up his counsel, got the gun, fumbled the vaccine, Walker grabs it, turns, aims at the victim shoots him and kills him. The reasonable inference, Your Honor, is that Walker had that gun ready to go, that's what they were talking about. This goes bad, these guys try to rob us, boom, we're going to kill them. Any other questions? I have none. Thank you. Mr. White, you may proceed. Thank you. Just briefly. First, I wanted to emphasize the weakness or the court's finding of credibility questions with the defendant's statements does not, does not render the, does not render the state's case more believable or more credible or prove those factors. Case law is replete with situations where eyewitnesses and participants are given great deferences, you know, things happen quickly, there's any number of reasons. Maybe he's protecting his friend because he thinks, you know, he could still get in trouble for self-defense, whatever it could be, that does not then create reasonable inferences that can be made to support the elements that the state is required to prove. And, you know, as far as the state saying that, you know, the only evidence that Shanquan said, give me the gun, or give me everything you have, rather, is the defendant's testimony. Well, that's not true. It's completely consistent, as you say, you can, you know, look at anything in the record, it's completely consistent with the state's own evidence that this clearly was going to be a robbery. There's no question of this, and along those lines, things, you know, quote, didn't go bad. This became an armed robbery, this had nothing to do with the defendant and his co-defendants, this was never going to be the unlawful purchase of a firearm. And to the extent that it was, or that they believed it was, that ended as soon as these three approached the cars. These three began approaching the car with what we know to be the intent to commit an armed robbery. That ended whatever criminal, you know, criminal design that these people had, that these defendants had. And in that, from that point forward, they were using self-defense, or as Justice Hudson points out, at the very least, it was stopping a forcible felony, which isn't exactly self-defense, but it is another way in which deadly force can be used. And it's clearly at least that, and is, you know, I think the evidence certainly shows it's self-defense as well, and certainly that grainy quick video does not establish that that was not self-defense. And if anything, it goes to what the trial court found, that there is evidence of self-defense. So I think that, you know, and once again, you know, just because they're worried about the possibility that this could go wrong does not mean that they contemplated violence being used, particularly at the outset when, you know, this was planned. And, you know, as counsel just said, you know, if what they're doing is holding on to a gun and saying, if these guys rob us, you know, we'll shoot them, well, that pretty much is the definition of self-defense. So if that in fact is what was happening, then they are justified in using it and they should not be precluded because this was not a forcible felony in this case. Would it be safe to say that the interpretation that the trial court gave to the facts in this case is that if they attempted to defend themselves, they were committing a forcible felony, which would then preclude the application of self-defense? I think in a nutshell, that's what it is. He didn't get to sort of that sophisticated analysis, but really the sort of the elephant in the room here is that violence occurred and it occurred, the violence, you know, the gunfire violence, not the armed robbery violence, because there's really more than one act of violence here. But the gunfire violence occurred by those people who planned to purchase a firearm on lawfully. So if we plan to buy a gun and there is a dead guy, we have to find somebody accountable. I mean, I think that really points to the sort of, to use his word, alacrity of the court's decision here in determining that the defendant has to be liable and finding, you know, sort of ignoring the intentional murder part that counsel spent, you know, the first part of our argument with. Yeah, there is evidence of self-defense here but moving along to forcible felony, he can't use it when it comes to the charge of felony murder. You know, seems a little disingenuous somewhat and I don't think it's supported by the law and for, you know, for that reason we ask that, you know, you reverse his convictions. Are you done? I am, yes. Any questions? No. Thank you. I don't have any other questions. Thank you. We'll take the case under advisement and render a decision in apt time. Great arguments. Thank you. Thank you. Mr. Marshall, you may close out the proceedings.